UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ERICK CALHOUN,

    Petitioner,

v.                                Case No:  2:20-cv-348-FtM-29MRM
                                   Case No. 2:18-CR-25-FTM-29MRM
                                   Case No. 2:18-CR-67-FTM-29CM

UNITED STATES OF AMERICA,

    Respondent.

_____

**OPINION AND ORDER**

This matter comes before the Court on petitioner's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #56)[1] filed on May 12, 2020.  The government filed a Response in Opposition (Cv. Doc. #6) to the motion on July 13, 2020.  For the reasons set forth below, the motion is denied.

**I.**

In 2018, petitioner was indicted in two cases in the Middle District of Florida.  On February 14, 2018, a federal grand jury in Fort Myers, Florida returned a one-count Indictment charging petitioner with being a felon in possession of a firearm and

___

[1]The Court will refer to the docket of the civil habeas case as "Cv. Doc." and will refer to the docket of the two related underlying criminal cases as "Cr. Doc." along with the specific case number.

ammunition (Case No. 2:18-CR-25-FTM-29MRM, Cr. Doc. #4, which will also be referred to as the First Case).  On May 9, 2018, a federal grand jury in Fort Myers, Florida returned a three-count Indictment charging petitioner with (1) being a felon in possession of a firearm and ammunition, (2) possession with intent to distribute marijuana, and (3) carrying a firearm during and in relation to a drug trafficking crime (Case No. 2:18-CR-67-FTM-29CM, Cr. Doc. #1, which will also be referred to as the Second Case).  Petitioner entered guilty pleas pursuant to a consolidated Plea Agreement (Case No. 18-cr-25, Doc. #26; Case No. 18-cr-67, Doc. #28), pleading guilty to Count One in the First Case and guilty to Counts Two and Three in the Second Case.

On January 22, 2019, the Court sentenced petitioner to 84 months imprisonment as to Count One in the First Case and 60 months imprisonment as to Count Two in the Second Case, to run concurrently; and 60 months imprisonment as to Count Three in the Second Case, to run consecutively to the other sentences; followed by a term of supervised release.  (Case No. 18-cr-25, Cr. Doc. #48.)  Judgment was entered on January 24, 2019.  (Case No. 18-cr-25, Cr. Doc. #49; Case No. 18-cr-67, Cr. Doc. #50.)  A Corrected Judgment (Case No. 18-cr-25, Cr. Doc. #51; Case No. 18-cr-67, Cr. Doc. #52) was filed on January 25, 2019.

Petitioner signed his § 2255 motion on May 6, 2020, and he raises four grounds for relief.  In Ground One, petitioner argues

that the Plea Agreement violated his Sixth and Fourteenth Amendment rights to a knowing, intelligent, and voluntary guilty plea. Petitioner argues that he did not know the content of the Plea Agreement and answered in the negative when asked if he was aware of the contents, but the judge ignored the answers and proceeded to accept the guilty pleas.  In Ground Two, petitioner argues that the federal court did not have jurisdiction to commence a criminal prosecution because it had never arrested petitioner or established probable cause to do so.  Petitioner asserts the State of Florida nolle prosed three counts based on a lack of evidence and probable cause before the federal authorities stepped in and pursued prosecution, in violation of petitioner's "1st, Liberty, Fourth Probable Cause, Search and Seizure, Arrest, Miranda Warnings and 6th and 14th U.S.C. Amendments."  (Cv. Doc. #1, p. 5.)  In Ground Three, petitioner argues that he was detained in custody without bond or bail for more than a year under duress and in violation of his First, Eighth, and Fourteenth Amendment rights to coerce the guilty pleas in this case.  In Ground Four, petitioner argues there was fraud and a fraudulent factual basis for the arrest and the Plea Agreement since petitioner was arrested without a warrant or probable cause.

## II.

Federal prisoners whose convictions became final after April 24, 1996, the effective date of The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), have one year from the latest of any of four events to file a § 2255 Motion:

> **(1)** the date on which the judgment of conviction becomes final;
>
> **(2)** the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> **(3)** the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> **(4)** the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Petitioner did not file a direct appeal in either case, and the convictions became final on February 8, 2019, i.e., 14 days after entry of the Judgment. See Mederos v. United States, 218 F.3d 1252, 1253 (11th Cir. 2000). Therefore, petitioner had until February 10, 2020[1], to file his § 2255 motion for habeas relief. Absent contrary evidence from the government, under the "mailbox rule" petitioner is deemed to have filed his motion on May 6, 2020, the date he signed the motion. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001).

---

[1] February 8, 2020 was a Saturday.

In the § 2255 motion, petitioner asserts that the untimeliness was caused by his state probation proceedings being affected by the outcome of the federal criminal proceedings and the Corrected Judgment. (Cv. Doc. #1, p. 11.) While the effect on the filing of a § 2255 motion is not clearly explained, the one-year limitations period is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 634 (2010); Akins v. United States, 204 F.3d 1086, 1089 (11th Cir. 2000). The government's request to dismiss (Cv. Doc. #6, p. 5) does not even discuss petitioner's admittedly rather cryptic explanation. Accordingly, the Court declines to resolve the § 2255 motion on a timeliness issue.

The government also seeks dismissal because petitioner has procedurally defaulted all four issues by failing to file a direct appeal raising the issues. The government argues that petitioner has failed to assert any exception to the procedural default rule, including cause and prejudice, a miscarriage of justice, or actual innocence. (Cv. Doc. #6, pp. 5-7.) Reading the *pro se* § 2255 motion liberally, as the Court must, petitioner is asserting his guilty pleas were involuntary and unknowing, coerced by a lengthy pretrial detention, and based on the lack of a factual basis after a bogus arrest and unlawful detention. The reasonable inference is that petitioner raises issues of factual innocence, which is the type of actual innocence within the meaning of the exception. Bousley v. United States, 523 U.S. 614, 623 (1998). The

government's response is insufficient to justify dismissal of the motion for procedural default.

### III.

**A. Ground One: Validity of Guilty Pleas**

Petitioner asserts that his guilty pleas were not made knowingly, intelligently, and voluntarily. Because the record establishes the contrary, Ground One is without merit.

"A guilty plea is more than a confession which admits that the accused did various acts." United States v. Broce, 488 U.S. 563, 570 (1989) (citations omitted). "By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." Id. For this reason, the United States Constitution requires that a guilty plea must be voluntary, and defendant must make the related waivers knowingly, intelligently and with sufficient awareness of the relevant circumstances and likely consequences. United States v. Ruiz, 536 U.S. 622, 629 (2002); Hill v. Lockhart, 474 U.S. 52, 56 (1985); Henderson v. Morgan, 426 U.S. 637, 645 (1976). A criminal defendant who has pled guilty may attack the voluntary and knowing character of the guilty plea, Tollett v. Henderson, 411 U.S. 258, 267 (1973); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992), or the constitutional effectiveness of the assistance she received from

her attorney in deciding to plead guilty, United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986).

To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of her guilty plea. United States v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999). Rule 11 explicitly directs the district judge not to accept a plea without determining these "core concerns." Therefore, on review, the court is "warranted in regarding the court's acceptance of the plea as a positive finding on each [component of the Rule]." United States v. Buckles, 843 F.2d 469, 473 (11th Cir. 1988).

Petitioner signed a 22-page Plea Agreement (Case No. 2:18-cr-25, Cr. Doc. #26; Case No. 18-cr-67, Cr. Doc. #28), which attested that petitioner was pleading guilty freely, knowingly, and voluntarily (id. at pp. 15-17) and contained a 5-page factual basis (id. at pp. 17-21) for the pleas. The Plea Agreement was initialed on every page by petitioner, who certified that he had read its entirety and fully understood its terms and signed the document. (Id. at p. 22.)

At the plea hearing,[2] the Magistrate Judge first placed petitioner under oath and explained the consequences of providing

---

[2] Transcripts have been created of the digital audio files of the change of plea originally filed on September 19, 2018. (Case No. 18-cr-25, Cr. Doc. #57; 18-cr-67, Cr. Doc. #58.)

any false or misleading information or answers. (Case No. 18-cr-25, Cr. Doc. #57, p. 5.) Petitioner stated that his level of education was the Twelfth Grade, and that he understood English. (Id., p. 8.) When asked if he understood the Plea Agreement, petitioner responded "yes, sir." (Id.) The Magistrate Judge concluded that petitioner's "waivers and consents are made knowingly, freely, intelligently, and voluntarily" and the pleas could be considered for both cases. (Id., p. 11.) The Magistrate Judge read the elements in each of the counts as detailed in the Plea Agreement, and asked petitioner if he understood the elements that the government would have to prove beyond a reasonable doubt. Petitioner responded "yes, sir." (Id., pp. 17-18.) Petitioner stated that he had no questions about the elements of any of the offenses. (Id., p. 18.) The possible penalties were also detailed, and petitioner had no questions regarding the applicable penalties. (Id., pp. 18-20.) The Magistrate Judge advised that the sentence ultimately imposed by the district judge could be higher than expected, and that petitioner could not withdraw the guilty plea if that occurred. (Id., pp. 21-23.) Petitioner stated he understood and confirmed his signature on the original plea agreement. (Id., pp. 23-24.) The Magistrate Judge asked petitioner if he had read every page and every word, and whether

he understood the plea agreement when his attorney went over it. Each time, petitioner responded "yes, sir."[3] (Id., p. 24.)

The Magistrate Judge then reviewed specific provisions within the Plea Agreement to ensure that petitioner understood that he would be bound to all the terms whether discussed or not. Petitioner stated he understood. (Id., pp. 25-26.) The Magistrate Judge reviewed the acceptance of responsibility, forfeiture of assets, sentencing non-binding recommendations, restitution, and the sentence appeal waiver. Petitioner stated he understood each of the discussed portions of the Plea Agreement. (Id., pp. 26-31.)

Petitioner told the Magistrate Judge that no promises or assurances had been made to him outside the Plea Agreement, and that he understood the consequences of his plea of guilty. (Id., p. 32.) The Assistant United States Attorney detailed the factual basis of the Plea Agreement, and petitioner stated that he read the facts and admitted to all the facts. The Magistrate Judge then went through specific facts, which petitioner admitted were true. (Id., pp. 35-43.)

Petitioner agreed that he was pleading guilty freely and voluntarily as in his best interest, and that he was doing so because he was actually guilty. (Id., p. 43.) Petitioner agreed

---

[3] Contrary to petitioner's statement in the § 2255 motion (Doc. #1, p. 4), petitioner did not tell the magistrate judge that he did not know or understand the contents of the Plea Agreement.

that no threats, coercion, force, or intimidation caused him to plead guilty. Petitioner also agreed that no promises were made to induce the guilty plea. (Id.) Defense counsel also stated they were not aware of any promises outside the Plea Agreement. Petitioner stated he had no concerns about his representation by counsel. (Id., pp. 44-45.)

The record establishes that the guilty pleas were voluntary, intelligent, and knowing made. The responses given by petitioner at the plea hearing establish the lack of any coercion. Further, the factual basis for the pleas was clearly reviewed and admitted by petitioner. Petitioner initialed each page of the Plea Agreement, including the pages addressing the voluntariness of the agreement and the factual basis. (Case No. 2:18-cr-25, Cr. Doc. #26, pp. 15-21; Case No. 18-cr-67, Cr. Doc. #28, pp. 15-21.) The Court finds that Ground One is without merit.

**B. Ground Two: Jurisdiction of Federal Court**

In Ground Two, petitioner argues that federal court did not have jurisdiction because the State of Florida found no probable cause to proceed with the charges when they were in state court. Petitioner argues that the prosecution was contingent on the state's failed efforts in violation of his constitutional rights. (Cv. Doc. #1, p. 5.)

As part of the Plea Agreement, petitioner "agrees that this Court has jurisdiction and authority to impose any sentence up to

the statutory maximum. . . ." (Case No. 18-cr-25, Cr. Doc. #26, p. 14; Case No. 18-cr-67, Cr. Doc. #28, p. 14.)  The parties may not stipulate to jurisdiction where none exists, so the Court will examine its subject matter jurisdiction *de novo*.

On January 17, 2018, a federal Criminal Complaint was issued charging petitioner with possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1) on August 8, 2017.  (Case No. 2:18-cr-25, Cr. Doc. 1.)  Petitioner was arrested by state law enforcement officers on January 19, 2018, in Lee County, Florida for fleeing or eluding law enforcement at a high rate of speed or wanton disregard (Count 1), resisting or obstructing an officer without violence (Count 2), driving while suspended or revoked (Count 3), possession of a weapon or ammunition by a felon (Count 4), possession of marijuana with intent to sell (Count 5), child neglect without great bodily harm (Count 6), and possession of a controlled substance without a prescription (Count 7).  On February 13, 2018, Counts 4 through 7 were nolle prosequi.

On February 14, 2018, a federal grand jury in Fort Myers returned the two Indictments described earlier and issued warrants for petitioner's arrest on the federal charges. On May 16, 2018, Counts 1 through 3 of the state case were nolle prosequi because of a federal prosecution of the charges.  (Case No. 18-cr-25, Cr. Doc. #40, ¶¶ 28, 63.)  The warrants based on the federal

Indictments were executed by petitioner's arrest at the Lee County Jail on May 25, 2018. (Case No. 18-cr-25, Cr. Doc. #14.) Petitioner appeared with court-appointed counsel on May 25, 2018, for an initial appearance before a federal magistrate judge. (Id. Cr. Doc. #10.) The government moved to detain petitioner without bond, so an arraignment and detention hearing were scheduled. (Id., Cr. Doc. #11.) At a June 1, 2018 arraignment, petitioner pled not guilty to all charges. (Id., Cr. Doc. #15.) Petitioner waived his right to a detention hearing without prejudice to seeking such a hearing later and petitioner was detained without bond. (Id., Cr. Doc. #18.)

A United States district court has jurisdiction —"exclusive of the courts of the States" — of "all offenses against the laws of the United States." 18 U.S.C. § 3231. See Musacchio v. United States, 136 S. Ct. 709, 717 (2016) ("Federal courts' general criminal subject-matter jurisdiction comes from 18 U.S.C. § 3231, which states: 'The district courts . . . shall have original jurisdiction . . . of all offenses against the laws of the United States.'") (alterations in original). "[S]ubject matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231, and, in almost all criminal cases, that's the beginning and the end of the 'jurisdictional' inquiry." United States v. Tinoco, 304 F.3d 1088, 1104 n.18 (11th Cir. 2002) (citation omitted). "So long as the indictment charges the

defendant with violating a valid federal statute as enacted in the United States Code, it alleges an 'offense against the laws of the United States' and, thereby, invokes the district court's subject-matter jurisdiction." United States v. Brown, 752 F.3d 1344, 1354 (11th Cir. 2014) (citation omitted). This would not have changed even if petitioner had been convicted of the state charges.[4]

Petitioner was indicted for offenses under valid federal statutes, and the district court therefore had jurisdiction regardless of what happened in state court on the underlying state law charges. The Court notes that, in light of Rehaif v. United States, 139 S. Ct. 2191 (2019), Count One in Case No. 2:18-cr-25 and Count One in Case No. 2:18-cr-67 fail to properly allege the offense of possession of a firearm by a convicted felon. While this type of omission from a § 922(g) indictment is plain error, United States v. Moore, 954 F.3d 1322, 1337 (11th Cir. 2020); United States v. Innocent, 977 F.3d 1077, 1082 (11th Cir. 2020); United States v. Johnson, 981 F.3d 1171, 1179 (11th Cir. 2020); United States v. Leonard, 4 F.4th 1134, 1143 (11th Cir. 2021); United States v. Dudley, 5 F.4th 1249, 1267 (11th Cir. 2021), it

---

[4] "Under current Supreme Court jurisprudence, the concept of dual sovereignty allows a state to prosecute an individual for a crime for which he already has stood trial in federal court, see Bartkus v. Illinois, 359 U.S. 121 (1959), and the United States to prosecute an individual for a crime for which he already has stood trial in a state court, see Abbate v. United States, 359 U.S. 187 (1950)." United States v. Hamm, 659 F.2d 624, 639 (5th Cir. Unit A Oct. 1981).

does not divest the district court of jurisdiction, Dudley, 5 F.4th at 1266-67; United States v. Bates, 960 F.3d 1278, 1295 (11th Cir. 2020); Moore, 954 F.3d at 1333-37.  Ground Two is without merit.

**C. Ground Three: Pretrial Detention**

Defendant argues that he was held in custody for more than a year, under duress, to coerce a guilty plea.  Defendant further argues that he was held at a federal facility and his counsel's request for reasonable bail was denied even though he was not deemed a flight risk or a danger to society.  (Cv. Doc. #1, p. 7.)  The record establishes otherwise.

At petitioner's federal arraignment on May 25, 2018, the government sought detention, arguing that petitioner posed a serious risk of flight and a danger to the community.  At the initial appearance hearing, the government argued that it was entitled to presumptive detention as to Count Three in Case No. 18-cr-67 by statute.  (Case No. 18-cr-25, Cr. Doc. #13; Cr. Doc. #18.)  A Pretrial Services Report (Id., Cr. Doc. #9) stated that petitioner appeared for his initial appearance on a Writ from the Lee County Sheriff's Office where he was being held on a violation of probation, with a revocation hearing scheduled for May 29, 2018.  The Report recommended detention because petitioner posed a risk of nonappearance due to his: (1) unverifiable residential, familial, and financial ties to the community; (2) lack of stable employment; (3) substance abuse history; (4) criminal record with

prior violations of probation; (5) criminal activity while on supervision; and (6) pending probation violation. Pretrial Services also assessed there was a risk of danger based on the nature of alleged offenses, his prior convictions for weapon and violent related offenses, and his substance abuse. (Id.) Petitioner, through counsel, waived the right to a detention hearing without prejudice and agreed to remain in custody. (Id., Cr. Doc. #18.) The Order of Detention Pending Trial (Id., Cr. Doc. #18) committed defendant to the custody of the Attorney General but allowed defense counsel the ability to request a detention hearing at a later date. No such request for a detention hearing was ever filed, and petitioner signed a Plea Agreement on September 10, 2018. Thus, petitioner was in federal custody for approximately four months before deciding to enter guilty pleas. Given the record at the guilty plea colloquy, there is no basis to challenge the validity of the guilty plea. There is no merit to Ground Three.

### D. Ground Four: Fraud

Defendant argues that the State of Florida authorities apprehended, arrested, and unconstitutionally detained him without a warrant or probable cause, and in violation of the Fourth Amendment of the U.S. Constitution, and the federal government committed fraud by advancing the case.

The factual basis for the plea was as follows:

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

The defendant, Eric Lamar Calhoun, is a convicted felon, having previously been convicted of five felonies in the State of Florida. On or about September 19, 2011, the defendant was convicted of the felony offense of Burglary of a Dwelling, in Lee County Case 11-CF-16218. On or about December 5, 2013, the defendant was convicted of the felony offense of Possession of a Firearm by a Convicted Felon, in Lee County Case 13-CF-16622. On or about September 29, 2014, the defendant was convicted of the felony offenses of Aggravated Assault with a Firearm, Shooting into a Building, and Possession of a Firearm by a Convicted Felon in Lee County Case 13-CF-383.

August 8, 2017

On August 8, 2017, Fort Myers Police Department (FMPD) Officer William Schulte conducted a traffic stop on a silver Toyota Camry appearing to have a tint on its rear windshield darker than is permitted by Florida law. Officer Schulte approached the vehicle and observed two occupants – the driver, identified as F.B., and the front-seat passenger, identified as the defendant. Another officer conducted a driver's license check on F.B. and determined that his license was suspended.

Officers Schulte and Zachary Ross searched the vehicle and located a firearm in the center console. The firearm was identified as a black Ruger, 9mm caliber handgun, Model SR9c, bearing serial number 333-80476. The firearm was loaded, with one round of Luger ammunition in the chamber and eight rounds of Luger

ammunition in the attached magazine. Ruger firearms and Luger ammunition are both manufactured outside the State of Florida.

Later, FMPD evidence technician Jessica Worthy was able to lift two latent fingerprints of value from the magazine that was attached to the firearm located in the vehicle. The latent fingerprint cards were sent to the Florida Department of Law Enforcement (FDLE) for comparison to the known standards of the defendant. FDLE latent print analyst Kate Fahey compared the prints, and concluded that one of the latent fingerprints lifted from the magazine matched the defendant's known fingerprint standards.

## January 19, 2018

On January 19, 2018, FMPD Detective Matthew Schulze, working in an undercover capacity, observed the defendant in the area of the Race Trac gas station at 2235 Cleveland Ave. in Fort Myers. At the time, Det. Schulze knew that the defendant had an active federal arrest warrant. Det. Schulze watched as the defendant exited the Race Trac store, entered the driver's seat of a black Hyundai Sonata bearing Florida Tag 8656GW, and drove out of the gas station parking lot. Det. Schulze maintained a visual of the vehicle, and radioed marked units to inform them of the defendant's presence in the vehicle.

FMPD Officers Brandon Birch and Eric Reitler pulled their marked patrol vehicle behind the defendant's black Sonata near the intersection of High St. and Indian St., and activated their lights and sirens in an attempt to pull the vehicle over. Instead of pulling over, the defendant accelerated his vehicle away from the patrol vehicle and continued traveling south on High St. The defendant turned east on Dr. Martin Luther King Jr. Blvd., and then turned south on Pauldo St. Officers Birch and Reitler ultimately disengaged their pursuit because of the defendant's reckless and

erratic driving, and deactivated their lights and sirens.

Numerous officers began to search for the defendant's vehicle in the surrounding area, and a few minutes later, FMPD Officer Phillip Youngblood located the vehicle at 2840 South St. The vehicle was parked in the parking lot adjacent to a warehouse, and the defendant was no longer inside the vehicle. FMPD Officer William Schulte entered the warehouse to inquire if the defendant had just run inside. Officer Schulte was advised that a male had just entered the business, and was pointed in the direction of the defendant. The defendant was subsequently arrested by FMPD officers. It was later determined that the defendant's five-year-old niece was present in the defendant's vehicle as he fled from law enforcement.

FMPD Officers Jason Greene and Miguel Hernandez searched the black Sonata. Inside the vehicle, in the center console, Officer Greene located a loaded black FN Herstal 9mm handgun, model FNS-9C, bearing *SIN* CSU0026190. The firearm was loaded with 16 rounds of Luger 9mm ammunition. Both the FN Herstal firearm and the Luger ammunition seized in this case were manufactured outside the State of Florida. An NCIC check on the firearm revealed it was stolen. In the front passenger door side-pocket, Officer Hernandez found eight small yellow baggies with marijuana.

Inside the trunk of the vehicle, officers located a grey Gucci backpack containing a large Ziploc freezer bag containing numerous different plastic baggies filled with marijuana, a small digital scale, and various articles of clothing. The large Ziploc freezer bag contained nine smaller plastic bags – four of the bags contained approximately 28 grams each (1 oz.) of marijuana and five of the bags contained approximately 14 grams each (½ oz.) of marijuana. The total weight of the baggies containing marijuana was approximately 189 grams.

> At FMPD headquarters, an FMPD crime scene technician dusted the plastic baggies and the firearm/magazine for latent prints. Two latent prints of value were developed from the handgun magazine, and three latent prints of value were developed from the plastic baggies that were packed with marijuana. FMPD Latent Print Examiner Trina Maurice concluded that the two prints lifted from the firearm matched the standard prints of the defendant, and that one of the prints lifted from a plastic baggie found in the backpack containing approximately one ounce of marijuana also matched the standard prints of the defendant.

(Id., Cr. Doc. #26, pp. 17-21.)  Petitioner admitted these facts during his guilty pleas.  Clearly, there was not a "lack of factual basis to enter into contract plea agreement."  (Cv. Doc. #1, p. 8.)  Ground Four is without merit.

Because petitioner's allegations are affirmatively contradicted by the record he is not entitled to an evidentiary hearing.  Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002).

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Petitioner's Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #56) is **DENIED.**

2. The Clerk of the Court shall enter judgment accordingly and close the civil file.  The Clerk is further directed to place a copy of the civil Judgment in the criminal file.

**IT IS FURTHER ORDERED:**

**A CERTIFICATE OF APPEALABILITY (COA) AND LEAVE TO APPEAL *IN FORMA PAUPERIS* ARE DENIED.**  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 183 (2009).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004), or that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (citations omitted).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** at Fort Myers, Florida, this   6th   day of April 2022.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Petitioner
AUSA